UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELISSA H.,[1]

      Plaintiff,

                                      Case No. 3:22-cv-3003

      v.                            Magistrate Judge Norah McCann King

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Elissa H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 6, 2019, Plaintiff filed her application for benefits,[3] alleging that she has been

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff had filed a DIB application in 2017, which was denied by a different administrative law judge on January 24, 2019. R. 77–94. Plaintiff therefore later amended her alleged disability

disabled since October 20, 2016, due to two "hip tears"; "right foot issues"; "right knee issues";

four herniated discs in the cervical spine; one herniated disc in the thoracic spine; a "hernia" in

L4 and L5; a "hernia" in L5 to S1; stage 1 stomach cancer; a "car accident"; and spinal fusion. R.

101, 113, 206–12, 239. The application was denied initially and on reconsideration. R. 127–32,

140–42. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 143.

Administrative Law Judge Scott Tirrell ("ALJ") held a hearing on November 17, 2020, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 32–76. In a

decision dated December 29, 2020, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from October 20, 2016,[4] through the date of that decision. R.

16–27. That decision became the final decision of the Acting Commissioner of Social Security

when the Appeals Council declined review on February 1, 2022. R. 1–6. Plaintiff timely filed

this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 24, 2022, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[5] On that same day, the case was

reassigned to the undersigned. ECF No. 5. The matter is ripe for disposition.

---

onset date in her new (the current) DIB claim to January 25, 2019, *i.e.*, the day after the date of
the prior decision. R. 16, 39–40, 77–94.

[4] The ALJ referred to the original alleged disability onset date of October 20, 2016, throughout
the decision, R. 17–18, 27, although the ALJ noted at the outset of his decision that Plaintiff had
amended that date to January 25, 2019, and stated that "the only issue before me should be
disability since January 25, 2019[.]" R. 16. Any alleged error in this regard is harmless, however,
because the ALJ necessarily considered the period beginning January 25, 2019, when he
considered the period beginning October 20, 2016.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f)). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.  ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 20, 2106, her original alleged disability onset date, and the date of the decision. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, status-post surgery; cervical degenerative disc disease; and thoracic herniated nucleus pulposus. R. 18. The ALJ also found that Plaintiff's diagnosed post-traumatic headaches, intractable and post-concussion syndrome, and alleged "right foot issues," "right knee issues," and stomach cancer are not severe. R. 19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

7

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–26. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an art teacher and sales clerk. R. 25–26.

Alternatively, at step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of other jobs—*e.g.,* jobs as a router, a small products assembler I, and a checker I—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 20, 2016, her original alleged disability onset date, through the date of the decision. R. 27.

Plaintiff disagrees with the ALJ's findings at steps three and four and argues that her "involuntary disability determination by the State of New Jersey preventing her from continuing her teaching career constitutes a de facto determination of disability." *Plaintiff's Brief,* ECF No. 26. Plaintiff apparently asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits. *Id.* The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 27.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 14, 2019, Plaintiff's treating physician, Nirav K. Shah, M.D., completed a six-page, fill-in-the-blank and check-the-box form entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("Medical Source Statement"). R. 313–18. Dr. Shah first assessed Plaintiff's ability to do work-related activities on a regular and continuing basis (*i.e.*,

eight hours a day, for five days a week, or an equivalent work schedule) using the following

scale: never, occasionally (meaning "very little to one-third of the time"), frequently (meaning

"from one-third to two-thirds of the time"), and continuously (meaning "more than two-thirds of

the time"). R. 313. According to Dr. Shah, Plaintiff could occasionally lift and carry up to ten

pounds, could sit for one hour at a time without interruption for a total of two hours in an eight-

hour workday, and could stand or walk for less than one hour at a time for a total of one hour in

an eight-hour workday. R. 313-14. Plaintiff does not require a cane to ambulate. R. 314. Plaintiff

could occasionally reach overhead and in all other directions with both arms, and could finger,

feel, push/pull, and frequently handle with both hands. R. 315. Plaintiff could also occasionally

use both feet to operate foot controls. *Id*. Plaintiff could occasionally climb stairs and ramps,

could balance, stoop, kneel, crouch, and crawl, but could never climb ladders or scaffolds. R.

316. Plaintiff had no impairment in her hearing or vision. *Id.* Plaintiff could occasionally operate

a motor vehicle, but could never tolerate unprotected heights, moving mechanical parts, humidity

and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and heat, or vibrations. R.

317. Dr. Shah left blank the question asking him to identify the particular medical or clinical

findings (*i.e.*, physical exam findings, x-ray findings, laboratory test results, history, and

symptoms including pain, *etc*.) that support his assessment and limitations, nor did he explain

why such findings support his assessment. *Id*. Dr. Shah further opined that Plaintiff could

perform such activities as shopping, travel without a companion for assistance, ambulation

without using a wheelchair, walker, or two canes or two crutches, climbing a few steps at a

reasonable pace with the use of a single hand rail, preparing a simple meal and feeding herself,

caring for her personal hygiene, and sorting, handling, and using paper/files; but Plaintiff could

not walk a block at a reasonable pace on rough or uneven surfaces or use standard public

transportation. R. 318. Asked whether there were any other work-related activities that were affected by Plaintiff's impairments, and to indicate how such activities are affected, and the medical findings that supported that assessment, Dr. Shah responded as follows: "She needs another surgery per [illegible]. Not improved after back/hip surgery[.]" *Id.* Dr. Shah also indicated that these limitations "were present since accident December 2015 and exacerbated by another accident slip & fall," had lasted for twelve consecutive months, and "will continue to debilitate. . . ." *Id.*

On March 20, 2019, Plaintiff presented for follow-up with Dr. Shah, complaining of continued back pain. R. 496–97. Upon examination, Dr. Shah noted good sensation, "5/5 strength in all major muscle groups with normal bulk and tone in the biceps, triceps, brachioradialis, quadriceps, and gastrocs [gastrocnemius]." R. 496. Although Plaintiff had pain to palpation in the mid-scapular region, her straight leg raising test was negative bilaterally with normal sensation in the lower extremities, reflexes were symmetrical bilaterally, Babinski was negative, gait was normal, range of motion was 60 degrees upon flexion, 10 degrees upon extension, and 25 degrees upon lateral rotation to the right and left. *Id.* Dr. Shah diagnosed traumatic rupture of lumbar intervertebral disc, subsequent encounter; sprain of ligaments of lumbar spine, subsequent encounter; radiculopathy, lumbar region; spondylolysis, lumbar region; low back pain; traumatic rupture of cervical intervertebral disc, initial encounter; and sprain of ligaments of cervical spine, initial encounter; post-traumatic headache, unspecified, intractable. R. 496–97. Dr. Shah noted further:

> The patient continues to have posttraumatic low back pain. *There may be some radicular improvement.* She requires home exercises and activity modification. Certainly further surgery is an option. *She remains disabled. I do not feel comfortable returning her to day-to-day activities such as full duty work. Even at a sedentary level she is unable to sit for greater than 20 minutes without discomfort. Therefore she cannot even do this.* We will continue to follow with her. I will give

10

her another script for er as she was unable to get the imaging.

R. 497 (emphasis added) ("March 20, 2019 opinion").

On May 1, 2019, Plaintiff followed up with Dr. Shah, complaining of neck and back pain radiating to her shoulders and legs. R. 339–40. On examination, Dr. Shah noted good sensation, "5/5 strength in all major muscle groups with normal bulk and tone in the biceps, triceps, brachioradialis, quadriceps, and gastrocs [gastrocnemius]." R. 340. Although Plaintiff still had mid-scapular pain on palpation, her straight leg raising test was negative bilaterally with normal bilateral lower extremity; reflexes were bilaterally symmetrical; Babinski was negative; gait was normal; range of motion was flexion to 60 degrees, extension to 10 degrees, and 25 degrees on lateral rotation to the right and left. R. 340. Dr. Shah diagnosed traumatic rupture of lumbar intervertebral disc, subsequent encounter; sprain of ligaments of lumbar spine, subsequent encounter; radiculopathy, lumbar region; spondylolysis, lumbar region; low back pain; traumatic rupture of cervical intervertebral disc, initial encounter; and sprain of ligaments of cervical spine, initial encounter; post-traumatic headache, unspecified, intractable. *Id*. Dr. Shah also noted as follows:

> Patient has been undergoing physical therapy with her chiropractor Dr. Beato since the third week of May 2018 patient discontinued physical therapy in August 2018. Chiropractic Care: Patient has been undergoing chiropractic care with Dr. Beato since the third week of May 2018, and has gone twice since then. Patient started chiropractic therapy again 2x per week from October 2017 through April 2018. Patient does not wish to share doctor/location of therapy. Patient has also attempted chiropractic from 12/2015 to 2016. Interventional Pain Management: Patient has attempted pain management during 2016-7 [sic] for the lumbar spine. These were spinal injections . Massage Therapy: Patient has been undergoing massage therapy with her chiropractor Dr. Beato since the third week of May 2018, and has gone twice since then. Activity Modification: *The patient is restricted in the following movements: crawling, crouching, kneeling, bending, twisting, pushing, pulling, squatting, lifting light or heavy objects off of the ground, carrying light or heavy objects, overhead reaching, and overhead lifting. The patient experiences limitations in the following postural activities: sitting limited to 30 minutes, standing limited to 20 minutes, walking limited to 10 minutes, and stair climbing*

11

> *limited to 1 flight. The patient experiences pain and difficulty with personal care*
> *activities such as: getting dressed and undressed. The patient experiences pain and*
> *difficulty with household activities such as: cooking, doing laundry, shopping,*
> *making the bed, cleaning the house, taking out the trash, mowing the lawn,*
> *vacuuming, and washing dishes. The patient has difficulty with dexterity tasks such*
> *as: opening new or tight jars.*

R. 339 (emphasis added) ("May 1, 2019 opinion").

## V.    DISCUSSION

### A.    Step Three

Plaintiff challenges the ALJ's finding, at step three of the sequential evaluation, that

Plaintiff's physical impairments neither meet nor medically equal a listed impairment,

specifically, Listing 1.04. *Plaintiff's Brief*, ECF No. 26, p. 2. Plaintiff's challenge is not well

taken.

At step three, an ALJ considers whether the combination of the claimant's medically

determinable impairments meets or equals the severity of any of the impairments in the Listing

of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it

satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those

criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits

under the 'equivalence' step by showing that the *overall* functional impact of h[er] unlisted

impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*,

493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are

set] at a higher level of severity than the statutory standard" because the "listings define

impairments that would prevent an adult, regardless of h[er] age, education, or work experience,

from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis

in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular

language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 1.04 addresses disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. In order to meet Listing 1.04, a claimant must demonstrate the following:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. [6]

---

[6] Section 1.00B2b defines an inability to ambulate effectively as follows:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.

*Id.*; *see also* 81 FR 66138-01, n.1 (Sept. 26, 2016) ("This means that we will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *Naples v. Comm'r of Soc. Sec.*, No. CV 17-267-E, 2019 WL 1434215, at *1 n.1 (W.D. Pa. Mar. 29, 2019) ("[T]he Court finds that the ALJ did not err in applying the Listings that were in effect at the time of his decision.").

Here, the ALJ determined at step two of the sequential evaluation that Plaintiff suffered the severe impairments of lumbar degenerative disc disease, status-post surgery; cervical degenerative disc disease; and thoracic herniated nucleus pulposus. R. 18. The ALJ went on to determine at step three that Plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal any of the listed impairments, including Listing 1.04, reasoning as follows:

---

Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*

14

> Regarding the orthopedic impairments, particular attention was given to listing 1.04. However, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis under listing 1.04. In this case, examination and treatment records from Princeton Brain & Spine do not show the claimant had any difficulty ambulating. (Exhibits B5F [R. 323–70] and B8F [R. 465–562]).

R. 19. The Court finds no error in the ALJ's reasoning in this regard and finds, further, that substantial evidence supports his consideration of Listing 1.04, including his express reference to evidence detailed later in his discussion. *Id*. Specifically, in considering whether Plaintiff meets or medically equals this Listing, the ALJ explained that the medical evidence does not establish the neurological defects required by Listing 1.04A or spinal arachnoiditis, which is required to satisfy Listing 1.04B; nor did the record establish that Plaintiff had difficulty ambulating, which is required by, *inter alia*, Listing 1.04C. *Id*. In addition, at step four, the ALJ engaged in a comprehensive review of the medical evidence relevant to Listing 1.04, noting, *inter alia*, a September 2018 physical examination by Princeton Brain & Spine that revealed normal muscle strength at 5/5 and good sensation; an October 2018 physical examination that revealed some decreased range of motion in the lumbar spine, but a normal gait, a negative straight leg raising test, and 5/5 muscle strength; a March 2019 physical examination that showed some mid-scapular pain and decreased range of motion in the lumbar spine, but a negative straight leg raising test, normal strength at 5/5, good sensation, and normal bulk and tone; the fact that Plaintiff had reported improved symptoms with chiropractic manipulations, heat, TENS and Motrin after a new back brace in May 2019 had been prescribed; and Plaintiff's report in October 2019 of pain in her tail bone and increased thoracic pain since hip surgery, although she also reported that her lumbar back pain was "manageable." R. 21–22. The ALJ found that this evidence failed to establish any significant limitations and he explained why more recent evidence did not support Plaintiff's allegations of disability:

15

Specifically, after careful review of the medical evidence of record, I note while some examinations demonstrated abnormal results, i.e., some decreased range of motion in the lumbar spine, mid scapular pain to palpation, many failed to show that she had any significant limitation in ranges of motion and there was no evidence of edema or motor deficits. *Strength was normal in all major muscle groups with normal bulk and tone in the biceps, triceps, brachioradialis, quadriceps and gastrocs. Straight leg raising was negative bilaterally. Her gait was normal and sensory examinations were normal in bilateral lower extremities* (Exhibit B8F).

Even the more current evidence fails to confirm the claimant's allegations of disability. In this regard, despite the claimant's reports of disabling pain, a physical *examination of February 5, 2020, did not show any deterioration in the claimant's conditions. In fact, physical examination continued to show some decreased range of motion in the lumbar spine, the only other positive finding was tenderness present in the mid back. The remainder of the examination was normal, including straight leg raising, motor strength, and sensory examination. Her gait was normal and pinprick to light touch was intact in all three divisions. A physical examination of June 25, 2020, notes similar findings.* The claimant also reported she *underwent chiropractic care with good relief*. Her medications included Ibuprofen, Motrin, Coxycycline and Medorl (Exhibits B9F-B11F). After careful analysis of the record, I conclude that the progress notes primarily summarizes the claimant's subjective complaints of pain in her back and right hip pain, etc., and diagnosis, and treatment, what is absent is objective clinical and laboratory diagnostic findings to show that the claimant was totally disabled.

These facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause her pain and other limiting symptoms. What these pieces of evidence suggest is that the claimant's symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity. The above residual functional capacity, as determined by me, gives adequate weight to the facts as determined consistent with the medical evidence and other evident of record. But also the more current diagnostic testing finding disc protrusion at L5-S1, without nerve involvement or instability noted.

Also, the evidence from her treating physician which do not document any deterioration in her conditions and notes in November 2019, wherein she reported her back pain was manageable and good relief of her symptoms with chiropractic care (Exhibits B9F-B11F). *Additionally, her gait and station were normal, strength was normal in all major muscle groups, and straight leg raising was negative bilaterally.*

In comparing the claimant's allegations with the medical evidence of record, I find them consistent in that the claimant's orthopedic disorders has [sic] limited the

16

claimant's ability to perform certain tasks (Exhibits B1F, 5F, and B8F). However, I find that the medical evidence and the claimant's own statements do not support the degree of limitation alleged by the claimant. For example, the claimant reported difficulty with personal care and limited mobility and severely limited ability to sit, stand, walk, etc. *However, she is able to live alone. She performs light household chores and prepares meals. She is able to take care of her personal needs, although it takes her a little longer. She has no difficulty driving to local places. She shops in stores and goes for little shopping trips two to three times a week. She drives down to the shore from where she lives. I also note she is able to ambulate with a normal gait without the use of an assistive device* (Exhibit B8F). Furthermore, despite her allegations of chronic, unrelenting and disabling pain, at the hearing, it was her testimony that she only takes ibuprofen for pain because she is "taking a holistic path and is afraid of Percocet, etc., because she does not want to become dependent[.]"

R. 22–23 (emphasis added).

Plaintiff nevertheless argues that "[t]he objective evidence of the record shows the presence of all of the necessary requirements of Section 1.04 both before and after the spinal fusion. The finding that they were not is not supported by the record. The case law has consistently shown that a rationale must be given and that simply did not occur in this case. Plaintiff relies upon the record below which substantiates this." *Plaintiff's Brief*, ECF No. 26, p. 2. The Court's summary of the evidence and the ALJ's decision, however, belies Plaintiff's argument in this regard. R. 19–25; *see also Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 124 (3d Cir. 2017) ("In this case, like *Jones*, the ALJ's decision, read as a whole, illustrates that the ALJ's conclusion that Fullen did not meet the requirements for any Listing . . . was supported by substantial evidence."); *Jones*, 364 F.3d at 505 ("the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing"); *Granados v. Comm'r of Soc. Sec. Admin.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec. Admin.*, 268 F. App'x 186, 189 (3d Cir. 2008)) ("An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the

ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'"). Moreover, Plaintiff, who bears the burden of proof at step three of the sequential evaluation, offers no substantive analysis of the evidence relative to Listing 1.04, nor does she provide any citation to the record to support her conclusory assertion regarding this Listing. *See Plaintiff's Brief*, ECF No. 26, p. 2; *see also Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (affirming denial of benefits where the claimant at step three "does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not" and "offers no explanation of how further analysis could have affected the outcome of his disability claim"); *Farmer v. Comm'r of Soc. Sec.*, No. CV 19-13437, 2020 WL 6620152, at *3 (D.N.J. Nov. 12, 2020) (finding that the claimant did not meet her burden at step three there she "did not even attempt to demonstrate that the medical findings are equal in severity to all the criteria for any Listing" and noting that "[t]he Commissioner bears no burden of disproof of equivalence"). The Court will not hunt through the record to find supporting evidence or construct Plaintiff's arguments for her. *See United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *cf. Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted). In short, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff did not meet or medically equal any listed impairment, including Listing 1.04.

### B.      RFC and Opinion Evidence

In an apparent challenge to the ALJ's RFC determination, Plaintiff argues that the ALJ erred in his evaluation of Dr. Shah's opinions. *Plaintiff's Brief*, ECF No. 26, p. 4. This Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to the opinions of treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the

---

[7] As previously noted, Plaintiff's current claim was filed on June 6, 2019.

claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2). The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the

RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with occasional climbing of ramps and stairs but never climbing ladders, ropes, or scaffolds. Further, the claimant can perform frequent balancing; occasional stooping, kneeling, and crouching; but never crawling. She can tolerate occasional exposure to extreme cold, extreme heat, wetness, and humidity. Lastly, she can occasionally reach overhead.

R. 19. In making this finding, the ALJ found, *inter alia*, that Dr. Shah's opinions were not

persuasive, reasoning as follows:

> Dr. Shah opined on March 20, 2019, that the claimant may have had some radicular improvement. The doctor stated that he did not feel comfortable returning the claimant to day-to-day activities. The claimant was noted to be limited for sitting to twenty minutes without discomfort (Exhibit B8F/33). In May, 2019, Dr. Shah stated that the claimant was "restricted in the following movements: crawling, crouching, kneeling, bending, brisling, pushing, pulling, squatting, lifting light or heavy objects off of the ground, carrying light or heavy objects, overhead reaching, and overhead lifting. The patient experiences limitations in the following postural activities: sitting limited to 30 minutes, standing limited to 20 minutes, walking limited to 10 minutes, and stair climbing limited to one flight. The patient experiences pain and difficulty with personal care activities such as: getting dressed and undressed. The patient experiences pain and difficulty with household activities such as: cooking, doing laundry, shopping, making the bed, cleaning the house, taking out the trash, mowing the lawn, vacuuming, and washing dishes. The patient has difficulty with dexterity tasks such as: opening new or light jars."

> Dr. Shah also submitted a medical form dated March 2019, wherein he opined the claimant could sit for a total of two hours, stand a total of one hour and walk a total of one hour in an 8-hour work day (Exhibit B3F). Dr. Shah further opined that the claimant could perform occasional bilateral reaching, frequent bilateral handling, occasional bilateral feeling and pushing and/or pulling, and occasional use of foot controls. Dr. Shah opined that the claimant was limited to occasional postural maneuvers but could never climb ladders or scaffolds, and could never work at unprotected heights or work with moving mechanical parts. It was opined that the claimant could occasionally operate a motor vehicle, but could never be exposed to environmental conditions of extreme cold, extreme heat, wetness, humidity, vibrations, or dust/odors/fumes/pulmonary irritants.

> I find that the opinions of Dr. Shah are not persuasive, because beyond the presence of some postural limitations, and a limitation to occasional overhead reaching, as

discussed above, and to the extent incorporated into the above residual functional capacity finding, there is virtually no support provided in the March, 2019 form for the assessed additional limitations. Additionally, Dr. Shah's clinical records do not note much in the way of significant positive clinical findings pertaining to the lumbar spine, including negative straight leg raising testing, normal gait, and examinations not focused on the cervical spine or upper extremities, despite the inclusion of related limitations in Dr. Shahs' [sic] opinions. Similarly, I find the other assessments by Dr. Shah discussed above, to not be persuasive, to the extent that they reflect the opinion of Dr. Shah, rather than notation as to statements by the claimant or something received from other health care providers, such as from the claimant's chiropractor (Exhibits B3F, B5F, and B8F).

R. 24–25. The Court finds no error with the ALJ's evaluation in this regard. *See* 20 C.F.R. § 404.1520c; *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance, [which] indicated a greater ability to walk, lift, and stand"); *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding a medical opinion not persuasive because "the examination

findings of the longitudinal record are not consistent with these rather extreme limitations," and the ALJ summarized medical evidence, including physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation, and normal reflexes except the plantar reflexes that were zero) (internal quotation marks omitted); *cf. Wright v. Comm'r of Soc. Sec.*, No. 3:20-CV-100, 2022 WL 1063157, at *5 (W.D. Pa. Apr. 8, 2022) (finding that the ALJ properly considered the supportability and consistency of "medical opinion in relation to other objective evidence and medical opinions" where the ALJ incorporated her prior discussion of, *inter alia*, "objective findings and treatment history").

Although Plaintiff insists that Dr. Shah's opinions "were persuasive and credible" and argues that "the Appeal Examiner [the ALJ] erred in finding them unpersuasive. The examiner did so without proper factual contentions to form this opinion[,]" *Plaintiff's Brief*, ECF No. 26, p. 4, the ALJ's discussion and supporting evidence in the decision contradicts Plaintiff's assertion. Moreover, Plaintiff, who bears the burden of proof at step four, offers no explanation or citation to the record to support this assertion. *See id*. Plaintiff's argument in this regard amounts to simply an undeveloped disagreement with the ALJ's decision which, as the Court has already explained, is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *cf. Wright*, 783 F. App'x at 245.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Dr. Shah's opinions.

C.      "[I]nvoluntary [D]isability [D]etermination by the State of New Jersey"

Plaintiff complains that her "involuntary disability determination by the State of New Jersey preventing her from continuing her teaching career constitutes a de facto determination of disability for this tribunal (res judicata)[.]" *Plaintiff's Brief*, ECF No. 26, p. 2. She argues that

> in addition to the physical impairments, Plaintiff suffers from mental impairments as well that prevent gainful employment. This is proven by her involuntary disability determination by her former employer (Robbinsville Public Schools – determination made by the State of New Jersey). Plaintiff's condition itself was evidential from her prior employment as a teacher and the nature of this disability made it difficult to properly present same below.

*Id*. at 3. Plaintiff goes on to insist as follows:

> The Court can take judicial notice of the fact (and pursuant to the case law must honor the fact) that she has been forced into an extremely prejudicial situation wherein the State of New Jersey deemed her involuntary disabled and unable to continue her job as a teacher due to a mental condition, yet the federal government is taking a position that she is not disabled thus leaving her in an impossible position where she cannot perform her job due to a disability but yet also cannot claim disability benefits due to the federal government's contention that she is not disabled.

*Id*. at 3.

Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff offers only her counsel's own conclusory assertion that the State of New Jersey has "deemed her involuntarily disabled[.]" *See id.* She provides no evidence supporting this assertion. *Id.* In any event, a state agency's disability determination is not binding on the Social Security Administration. 20 C.F.R. §§ 404.1504 (noting that other government agencies and nongovernmental agencies, including, *inter alia*, "State agencies," make disability decisions "for their own programs using their own rules" and "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . *is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules*") (emphasis added),

24

404.1520b(c)(1)–(3) (stating that evidence such as "[d]ecisions by other governmental agencies and nongovernmental entities[,]" "[d]isability examiner findings[,]" and "[s]tatements reserved to the Commissioner . . . [that] would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act" constitute "[e]vidence that is inherently neither valuable nor persuasive").

Moreover, to the extent that Plaintiff now complains that the ALJ failed to consider her unidentified "mental impairments" in connection with this unexplained "involuntary disability determination[,]" *Plaintiff's Brief*, ECF No. 26, pp. 1 (asserting generally that Plaintiff "also has serious severe mental impairments"), 3, those conclusory assertions are not well taken. First, as previously noted, Plaintiff did not identify any mental impairment when she applied for benefits. R. 239. Second, Plaintiff's counsel in the underlying administrative proceedings expressly denied that Plaintiff's claim for disability was based on any mental impairment:

> ALJ: Okay. All right. And Mr. Polansky, is the record – it looks like a record -- there was -- I see a five-day letter referencing chiropractic treatment records, which now are in the file. So is the record complete at this time?
>
> ATTY: We believe it is, Your Honor.
>
> ALJ: *All right, and am I correct that there are no mental impairments being alleged to be severe impairments?*
>
> ATTY: *We are not suggesting that. There are no significant mental impairments.*

R. 40 (emphasis added).

Plaintiff's conclusory argument in this regard is without merit.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


                                         *s/Norah McCann King*
                                         NORAH McCANN KING
                            UNITED STATES MAGISTRATE JUDGE